14478

SMITH v. COXE *ET AL.*

(191 S. E., 422)

January, 1935.

*Messrs. Rogers & Ellerbe* and *G. W. Freeman, Jr.,* for appellant.

*Messrs. S. J. Ervin, Jr.,* and *Stephenson & Lindsay,* for respondent,

May 6, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an action to construe the will of the late R. C. Coxe of Marlboro County, to determine what Francis Edwin Coxe and James Dougal Coxe take thereunder. The action was brought by Mrs. Clara C. Smith (nee Clara H. Covington), as plaintiff, against Francis E. Coxe, J. Dougal Coxe, Mrs. Annie E. Coxe, and Guerry Hudson Smith. William Gause Smith, and Ellen Coxe Smith, representatives of themselves and any other children that may be born to their mother (Mrs. Clara C. Smith), and Connie Maxwell Orphanage. While this case was on appeal to this Court, Clara C. Smith died, and by proper order, Henry S. Covington, as guardian *ad litem* for the minor defendants, Wil-

liam Gause Smith and Ellen Coxe Smith, was substituted as appellant, and allowed to file exceptions to the decree of the Circuit Judge and prosecute the appeal.

Although items fourth and fifth are the only portions of the will to be construed, yet for a better understanding of the possible interest of the other parties to this cause, we direct that items second, third, and sixth of the will be reported.

Mrs. Annie E. Coxe is. living, and it is conceded by all that she has a life estate in all lands of the testator.

The ·following are the items of the will sought to be construed:

"Item Fourth. In the event that no child or children are born of our marriage, I gave, devise and bequeath, after the death of my wife, to Francis Edwin Coxe, all of my lands known as the home place lying west of the road from Salem Church to Hunts Bluff and south of Machine Creek, and containing about three hundred acres."

"Item Fifth. In the event that no child or children are born of our marriage, I give, devise and bequeath, after the death of my wife, to James Dougal Coxe all of my home place lying on the east side of the road from Salem Church to Hunts Bluff and north of Machine Creek, containing about four hundred and fifty acres."

Paragraph fourth and fifth of the complaint are as follows:

"Fourth: That at the time of the death of the said R. C. Coxe, he was the owner of, and in possession of several tracts of land, among them being a tract of land containing about seven hundred (700) acres, known as the home place which he acquired by inheritance from his father, and a tract containing two hundred and seventy (270) acres, more or less, known as the Egypt Place and a tract containing about thirty-seven (37) acres known as Indigo Field. The defendant, Mrs. Annie E. Coxe, to whom he devised all of

his lands for life is now in possession of all of the aforesaid lands.

"Fifth: That the plaintiffs informed and believes and therefore alleges that the defendant, Francis Coxe, is claiming that under the terms of the aforesaid will, he has a vested remainder in the tract of land known as Indigo Field, and that the defendant, Dougal Coxe, is claiming that he has a vested remainder in the Egypt Place and all of the balance of the home place not specifically devised to Francis Coxe. That the defendants, Francis Coxe and Dougal Coxe, acting upon said claim have been attempting to sell the timber upon the said tracts, and have been negotiating with the defendant, Mrs. Annie E. Coxe, for a release of her interest therein. The Plaintiff alleges that the said property including a portion of the home place other than the portion of the home place specifically devised to Francis Coxe and Dougal Coxe will not pass to them under the terms of said will upon the death of Mrs. Annie E. Coxe, but to the plaintiff or her representatives under the provisions of Item Six of said will."

Paragraph 3 of the answer of the respondents, Francis E. Coxe and J. Dougal Coxe, is as follows:

3. Further answering, they allege that the said R. C. Coxe, who was their uncle, being the brother of their father, died on or about the 20th day of October, 1916; that at the time of his death he was residing at his home in Marlboro County, State aforesaid, upon the tract of land set apart to him in the partition of the estate of his father and mother, and stated in his will to contain about seven hundred fifty (750) acres, and where he and his wife had resided and made their home all through their married life, the whole tract so set apart to him as his share as aforesaid being contiguous and lying around his dwelling and comprising his home place, and being designated as his home place in his will and being divided into two parts, substantially equal in value, by the run of Machine Branch

and the road leading from Salem Church to Hunt's Bluff; that by his last will and testament he devised one part thereof; to wit: that lying south of Machine Branch and west of the road to the defendant, Francis Coxe, and the balance thereof to the defendant, Dougal Coxe, both devises being subject to the lifetime rights in the said lands given to his widow, Mrs. Annie E. Coxe, defendant herein. These defendants allege that under and by his will they each take a vested remainder in the respective portions of the said tract of land devised to them as above set forth, and that neither the plaintiff nor her children are entitled to any part thereof. They further allege that if there is any obscurity of expression in the language of the will, which they do not admit, that it was the intention of the testator, after giving a lifetime interest in the said property to his widow, the said Mrs. Annie E. Coxe, to divide the entire remainder interest therein between these two defendants, the said Francis Coxe taking all that part of the land inherited from his father and mother by the said R. C. Coxe as above referred to, separated from the remainder of Machine Branch and the public road above mentioned; and Dougal Coxe the rest of the said land."

The land of testator contiguous and lying around the dwelling where he and his wife had resided and made their home throughout their married life, and being the same land which testator received in a partition of his father's land, had running through it in a west to east direction, and about the center, a branch known as Machine Branch, and running through the lands in almost a north and south direction on the eastern side, a public road leading from Hunt's Bluff to Salem Church. This public road crosses Machine Branch near the extreme northeastern portion of these lands and continues on in a northern direction.

The record does not disclose upon whose motion, but the case was referred to F. L. Willcox, Esq., an able and outstanding lawyer of this State, located at Florence, S. C., to

take the testimony and report his conclusions of law and fact.

Mr. Willcox held references at which considerable testimony was taken to determine two questions: (1) What land constituted the "home place" of R. C. Coxe; and (2) what lands passed to Francis E. Coxe and J. Dougal Coxe under items.fourth and fifth of the will? Testimony was taken on the theory that there was a latent ambiguity as to the lands comprising the "home place" of the testator, and the lands passing under the terms of the will to Francis E. Coxe and J. Dougal Coxe.

In a most comprehensive report, clearly reflecting a complete grasp of the facts and the law governing the issues, the Special Referee held that all of the lands adjoining and contiguous to the residence of the testator and his wife, Annie E. Coxe, comprised testator's "home place," and that it was his intention to devise to Francis E. Coxe all of said "home place" west of the public road from Salem Church to Hunt's Bluff, and south of Machine Branch, and to J. Dougal Coxe all of said "home place" east of said public road and north of said branch.

The Circuit Judge, in an able decree, confirmed the report of the Special Referee, and ordered that his report "* * * stand with this as the decree of the Court."

The appellant, Henry S. Covington, as guardian *ad litem* for the minor defendants heretofore named, comes to this Court on seven exceptions, but in printed brief states the questions involved to be four, and as follows:

"1. Is there a latent ambiguity in the will of R. C. Coxe as to the location and boundaries of the devises to Francis and James, and is extrinsic testimony admissible in construing same?

"2. What was devised to James D. Coxe under the will of R. C. Coxe?

"3. What was devised to Francis E. Coxe under the will of R. C. Coxe?

"4. What is included in 'the Home Place' and 'Place known as the Home Place,' as used in the will.?"

We will first take up "Question 4". We do not consider it necessary to herein set forth any of the testimony. Suffice it to say that we have carefully read the record, and are impressed with the correctness of the findings of fact by the Special Referee, concurred in by the Circuit Juwge. Aside from this, findings of fact by the Referee, concurred in by the Circuit Judge, are conclusive of such fact, if there be any testimony to support same.

We are not prepared to say that a latent ambiguity existed, but if it did, the preponderance of testimony is that all lands contiguous and adjoining the residence of the testator, R. C. Coxe, and received by him in the partition of the lands of his father and mother, regardless of the names of the various fields or tracts of land, were considered by him as his "home place."

Questions 1, 2, and 3 may be discussed as one.

One of the best statements we have seen regarding "Patent and Latent Ambiguities" will be found in Section 245, under the title, "Wills," in 28 R. C. L., pp. 273-275, and follows:

"Patent and Latent Ambiguities Generally.—The Courts have frequently attempted to dispose of the question whether extrinsic evidence is admissible to identify a devisee or legatee in an ambiguous devise or legacy, by the test whether the ambiguity was latent or patent. A patent ambiguity is one which appears on the face of the will itself, and the rule has been laid down in numerous cases that extrinsic evidence is not admissible to remove such ambiguities, but is admissible in the case of latent ambiguities arising dehors the will. The rule refusing to permit parol evidence to explain a patent ambiguity is, however, not always followed, and the distinction is sometimes abolished by statute, and parol evidence allowed to explain either a patent or latent ambiguity. Where the distinction between patent and latent ambiguities is recognized the difficulty is to

determine from the language of a defective will whether the ambiguity belongs to the class of ambiguities which may be explained by parol evidence. One test of a latent ambiguity is whether the language is apparently not of double meaning, but is shown to be so only by aid of extrinsic facts. Thus a latent ambiguity may arise upon a will, when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer such name or description, so that either person might take or either thing might pass but for the existence of the other. Under this test the rule is that parol evidence is admissible to solve a latent ambiguity produced by extrinsic evidence in the application of the terms of a will to the objects of a testator's bounty. But the words of a will must be such as to render it a matter of necessity to have recourse to extrinsic evidence to explain them; if no such necessity exists, the evidence is not admissible. A latent ambiguity may also arise when a will contains a misdescription of the object or subject."

We quote from the decree of Judge Dennis:

"The question of the admission of testimony as to the construction of wills or other written instruments on such account is, of course, in its general terms familiar. The application to particular cases sometimes becomes difficult. The following statement from the case of *Jennings v. Talbert,* 77 S. C., 454, 456, 58 S. E., 420, 421, will be a sufficient standard to proceed by in this case:

" 'Ambiguities, however, are patent and latent; the distinction being that in the former case the uncertainty is one which arises upon the words of the will, deed, or other instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the will, deed, or other instrument as looked at in themselves, but upon those words when applied to the object or subject which they described. 2 Ency. of Law, 388. Thus, where there is a conflict in words or clauses of a will or other

instrument, the ambiguity is patent. Where, however, there is no defect upon the face of the paper, but, when attempting to put into effect, it appears that there is uncertainty, as for instance where there are two legatees of the same name or two pieces of property which the description fits equally well, the ambiguity is latent. In the former case the construction and intention must be derived solely from the words contained in the instrument. In the latter case parol testimony may be received to enable the reaching of a correct conclusion. 30 Ency. of Law, 678; *Donald v. Dendy*, 2 McMul. [123], 130; *Patterson v. Leith*, 2 Hill, Eq. [15], 17.' "

It having been settled as to the lands comprising the "home place" of the testator, there is certainly no patent ambiguity. The will clearly devises "all of my home place lying on the east side of the road from Salem Church to Hunts Bluff and north of Machine Creek, containing about four hundred and fifty acres" to J. Dougal Coxe; and to Francis E. Coxe "all of my lands known as the Home Place lying West of the road from Salem Church to Hunt's Bluff and South of Machine Branch and containing about three hundred acres." With a plat of these lands before us, the writer hereof could not have more definitely described the lands devised unless complete boundaries had been resorted to, and a more accurate acreage given; the latter being of little weight in determining the lands devised. This is one of those cases where, if there existed a latent ambiguity, its existence was created by the aid of extrinsic facts.

The result of this case is in no wise affected by the allowance and admission of testimony on the theory that a latent ambiguity existed. The will clearly denotes the land devised. The testimony, while raising some technical doubt, thereby possibly creating a latent ambiguity where none existed before, is overwhelming that the home place of R. C. Coxe was divided between Francis E. Coxe and J. Dougal Coxe,

with Machine Branch as one dividing line and the road from Salem Church to Hunt's Bluff as the other dividing line.

We have considered all exceptions and the same are overruled, and the decree and judgment appealed from is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.